**In the Matter of the Grand Jury Subpoenas to MIDLAND ASPHALT CORPORATION and Krantz Asphalt Co., Inc., dated February 12, 1985.**

**No. CIV-85-633E.**

United States District Court,
W.D. New York.

June 26, 1985.

# MEMORANDUM and ORDER

ELFVIN, District Judge.

This is a proceeding brought by Midland Asphalt Corporation and Krantz Asphalt Co., Inc.[1] ("the petitioners"), seeking advancement of some $18,000 in costs which they assert will be incurred by them in complying with the terms of grand jury subpoenas duces tecum that had been issued February 12, 1985 and served upon them in connection with an investigation of possible violations of the federal antitrust laws.[2] In addition, petitioners seek a protective order pursuant to Fed.R.Cr.P. rule 6(e) which would shield from disclosure to their competitors documents that contain confidential commercial information. Oral argument concerning petitioners' requests was held June 17, 1985.

In support of the request for advancement of costs petitioners have submitted the affidavit of their Secretary, Bradford H. Banks, which avers that 120 hours of their employees' time already have been expended in locating, compiling and duplicating documents that have been supplied in response to the subpoenas, that approximately 600 additional hours will be expended in gathering and duplicating the remaining documents required to be produced by said subpoenas and that it costs petitioners roughly $20 per man hour for the time utilized in responding to the subpoenas. It is further asserted that 36,000 copies of documents will be made by petitioners in complying with the subpoenas at a cost of $3,600 and therefore that their total expenses related to complying with the subpoenas will be $18,000 (720 hours × $20 per hour plus $3,600 in costs).

Petitioners contend that this sum of $18,000 represents 41% of the net operating income of Midland Asphalt Corporation and its subsidiaries for the fiscal year ending March 31, 1984 and therefore that compliance without advancement or reimburse-

Charles V. Reilly, Antitrust Div., U.S. Dept. of Justice, New York City, for the government.

Leslie Greenbaum, Buffalo, N.Y., for petitioners.

1. Krantz Asphalt Co., Inc. is a wholly owned subsidiary of Midland Asphalt Corporation.

2. During the pendency of this proceeding petitioners agreed to submit certain non-sensitive documents to the grand jury without prejudice to this Court's determination whether they would be entitled to "reimbursement" rather than "advancement" of costs.

ment of such expenses would result in an unreasonable financial burden upon them. The government has argued that petitioners' instant application seeking to quash or modify the grand jury subpoena had been untimely under Fed.R.Cr.P. rule 17(c) [3] and that petitioners should in any event bear the full costs of compliance.

*In Re Grand Jury No. 76–3 (MIA) Subpoena Duces Tecum,* 555 F.2d 1306 (5th Cir.1977), held that "a court in exercising its power under Rule 17(c) of the Federal Rules of Criminal Procedure may, in appropriate circumstances, 'modify' the subpoena to require that the costs of compliance be borne by the Government." 555 F.2d at 1308. However, it was therein recognized that

> "[a]s a general rule, a witness or the recipient of a subpoena duces tecum is required to bear the costs of compliance. Since some costs can be anticipated in complying with any subpoena duces tecum, Rule 17(c)'s provision that the court may quash a subpoena 'if compliance would be unreasonable or oppressive' must be read to mean that in the main run of cases the cost of compliance will be assumed as part of the public duty of providing evidence." *Ibid.*[4]

Other courts also have recognized the general rule requiring the recipient of the subpoena to bear the full costs of compliance and have required a clear showing of unreasonableness or oppressiveness in order to warrant modification or quashing of a grand jury subpoena duces tecum. *See In re Grand Jury Investigation,* 459 F.Supp. 1335 (E.D.Pa.1978); *In re Grand Jury Subpoena Duces Tecum, Etc.,* 405 F.Supp. 1192, 1198 (N.D.Ga.1975); *cf. In re*

*Corrado Brothers, Inc.,* 367 F.Supp. 1126 (D.Del.1973).

■ In the case at bar, having considered the submissions and arguments of counsel for both parties, this Court finds that petitioners have not sufficiently established that their uncompensated compliance with the terms of the subpoena would be oppressive or unreasonable. They have not disputed the government's assertion that they have sales of $8,000,000 and that the claimed costs of $18,000 represent less than 2% of their operating expenses according to their latest financial report. In addition, the subpoenas in question had called for production of the original documents and therefore the total expenses claimed by petitioners must be reduced by the costs relating to the photocopying of the documents. *See* footnote 4, *supra.* Compliance with a subpoena duces tecum ordinarily will result in some inconvenience and costs to the recipient and the instant petitioners have not demonstrated with sufficient clarity that their shouldering of the full costs of compliance would be unduly onerous.

With respect to the application's request for a protective order, initially it is noted that it has not been asserted by petitioners that the subpoenaed documents are irrelevant to the grand jury's investigation or that production would violate any Fifth Amendment privilege against self-incrimination. Rather, petitioners have contended that this Court has the discretionary authority under Fed.R.Cr.P. rule 6(e) to protect them from the potential disclosure to their competitors of competitively sensitive information.[5] They have pointed out that

**3.** Rule 17(c) provides that a court "on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive." The subpoenas in issue were returnable March 19, 1985 yet petitioners and the government had agreed that upon the submission of certain documents March 19th, petitioners could then submit by May 15th the balance of the documents due. On May 15th petitioners filed this action and obtained a stay of further compliance.

**4.** In addition, it was held by that court that, in determining whether the costs of compliance actually are unreasonable or oppressive, such expenses should be measured by the cost of production of the original documents rather than reproduction of such inasmuch as the duplication of documents is undertaken by the subpoena's recipient for his own convenience. *Id.* at 1308–09.

**5.** The proposed protective order submitted by petitioners essentially would prohibit disclosure of documents containing sensitive business in-

the subpoenas require production of profit and loss statements, cost records and other information which, if shown to any of their competitors during the course of the grand jury's proceedings, would result in serious and irreparable injury to their business.

■ Although this Court recognizes petitioners' proprietary interest in the information sought to be shielded and the harm to their businesses that might occur should their competitors view such records in the course of the grand jury proceedings, they are not entitled to the requested protective order. There is a public obligation to provide evidence to a grand jury—*see Hurtado v. United States,* 410 U.S. 578, 93 S.Ct. 1157, 35 L.Ed.2d 508 (1973)—and the grand jury's right to obtain every man's evidence and its investigative "duty '[are] usually paramount over any private interest which may be affected.'" *In Re Morgan,* 377 F.Supp. 281, 285 (S.D.N.Y.1974) (quoting from *McMann v. Securities and Exchange Commission,* 87 F.2d 377, 378 (2d Cir. 1937)). In the absence of a claim of a recognized privilege against disclosure—*e.g.,* the Fifth Amendment or the attorney/client privilege—the recipient of a grand jury subpoena may not properly attempt to modify its terms or to limit the grand jury's utilization of summoned documents despite the potential damage to its business upon their disclosure.[6] *Cf. In re Morgan, supra,* at 285. *See also United States v. Grand Jury Investigation,* 417 F.Supp. 389, 391–392 (E.D.Pa.1976).

For these reasons it is hereby ORDERED that the application for advancement of costs and for a protective order is denied in all respects.

---

formation to persons other than attorneys, experts, statisticians and consultants employed by the Department of Justice's Antitrust Division, members of the grand jury, employees of petitioners, and other persons designated by a court order or applicable law.

**6.** Counsel for the government had indicated at oral argument his recognition of petitioners'

interest in non-disclosure of the records in issue to their competitors. It is assumed that the attorneys for the Antitrust Division will act in good faith relative to such documents in view of such recognition of the proprietary value of said information in order to avoid needless disclosure of such to any witness or person involved with the grand jury's investigation.