418 So.2d 1326 (1982)
STATE of Louisiana
v.
Roy Edward ATES.
No. 81-KA-2698.
Supreme Court of Louisiana.
June 21, 1982.
Rehearing Denied September 24, 1982.[*]
*1327 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., John R. Harrison, Lavalle Salomon, Bruce G. Whittaker, Asst. Dist. Attys., for plaintiff-appellee.
J. Randolph Smith, Gilmer P. Hingle, Smith & Hingle, Monroe, for defendant-appellant.
PHILIP C. CIACCIO, Justice Pro Tem.[**]
The defendant, Roy Edward Ates, was charged and convicted, after a jury trial, of the crime of second degree murder. R.S. 14:30.1. He has appealed relying upon 17 assignments of error.
On the night of September 29, 1980, the defendant, Roy Ates, and his wife, Katherine, were at home with their three year old son. As the defendant was handling a shotgun, it discharged, hitting his wife in the face and killing her instantly. The defendant at first professed that the incident was an accident that occurred because his gun malfunctioned as he was cleaning it. He later admitted that the day before this incident he took the victim's grandfather with him to use the gun and thereby established an alibi that the gun malfunctioned in operation. He further stated that on the day of the shooting he and his wife had visited the grave of one of their children who had died. He said that his wife had blamed him for the child's death, although the child died of natural causes. When they returned to their house that afternoon, the defendant wanted to watch television but his wife kept insisting that he go to another room and get their daughter. The wife left the room and returned. The defendant was cleaning his gun. He admitted thinking a lot about killing her, but he contends that on this day he only meant to scare her by shooting the gun. He pulled the trigger and the gun discharged hitting his wife in the face. The defendant grabbed his son, who was playing in the room, and ran to a neighbor's house.
The defendant's former girlfriend, Mary Deland, testified that she had started dating the defendant in June, 1979 when he was separated from his wife. She became engaged to marry him on Christmas of 1979. In June, 1980 she moved with him to Oklahoma and lived with him until July, 1980 when he returned to his wife. She saw him on September 20, 1980 to return his clothes. She stated that they had met several times after this and the defendant advised her that he wanted to marry her but he could not go through with a divorce or separation and that the only way out of his marriage was to kill his wife. She saw on the news that the defendant had killed his wife. She stated that the defendant told her about the alibi incident with the victim's grandfather and that on the night of the shooting debated with himself about killing his wife. He admitted to this witness that the gun went off as he was contemplating the act and that he shot his wife.
The defendant was arrested on January 19,1981 and subsequently charged, by a bill of indictment, with the murder of his wife, Katherine Ates.
*1328 Assignment of Error Nos. 6 and 17.
The defendant excepted and assigned error to the refusal of the trial court judge to order the State to produce prior statements made by the defendant's girlfriend, Mary Deland. The defendant filed a motion to produce any such statements made to investigatory bodies or law enforcement personnel. The defendant filed a subpoena duces tecum directing the prosecuting District Attorney to produce in open court the trial transcription of all such statements and he also requested portions of the materials relating to Grand Jury testimony for inspection during the trial. The State filed a motion to quash the subpoena. In the alternative, the defendant asked that an in camera inspection of the statements be conducted by the Court.
Rulings on these motions were deferred for disposition at trial by the trial judge. The defendant objected to the court's ruling. During the trial testimony of witness Deland, defendant moved again for the transcripts of prior statements which could be used to impeach her credibility or alternatively for an in camera inspection.
The defendant contends that because the testimony of Ms. Deland was virtually indispensible to the State's case in proving motive and premeditation, it was vital to his defense wherein he alleged and sought to prove that the killing was accidental.
Under the United States Supreme Court decision of Brady v. Maryland, the State, upon request, must produce evidence that is favorable to the accused where it is material to guilt or punishment. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This rule has been expanded to include evidence which impeaches the testimony of a witness where the reliability or credibility of that witness may be determinative of guilt or innocence. Giglio v. U.S., 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Where a specific request is made for such information and the subject matter of such a request is material, or if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the information to the trial judge. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 346 (1976).
Under the laws of the State of Louisiana, as a general rule, the prosecution is not required to furnish statements by witnesses made to the District Attorney or an investigative body. C. Cr. P. Art. 723. The exceptions to such discovery are specifically prescribed by statute. C. Cr. P. Arts. 716, 718, 721-723. The defendant may not be denied exculpatory statements made by a witness other than the defendant provided the statement is material and relevant to the issue of guilt or punishment. State v. Landry, 381 So.2d 462 (La., 1980). The defendant's request for such materials must be specific and relevant. State v. Davenport, 399 So.2d 201 (La., 1981). There is, however, no duty to provide defense counsel with unlimited discovery. U.S. v. Agurs, supra.
In this case the defendant filed numerous discovery motions. He filed a motion for production, wherein, he requested a transcript of the statements made by Mary Deland to officers of the Ouachita Parish Sheriff's Office. In the motion he requested, in the alternative, that an in camera inspection be conducted by the court to determine if inconsistent statements had been given by Ms. Deland. He also filed a subpoena duces tecum for these materials. The court conducted a hearing on the defendant's motion. The court noted that although the law provided for the defendant to be given exculpatory statements, it does not provide for a transcript of the witness' testimony. After making this remark the judge advised counsel that he reserved the defendant's right, at trial, to move for production of the witness' inconsistent statements, if he felt at that time that there were any such statements. The defendant objected to the ruling.
During the interrogation of Ms. Deland, defense counsel moved for "production of prior statements of Mary Beth Deland for purposes of impeachment" and he asked for "an in camera inspection." The *1329 request was denied. This ruling was in error.
The defendant's request was specific, i.e., "prior statements of Mary Beth Deland, for purposes of impeachment." Although not phrased in as precise a manner as would be desirable, it was apparent that the request was for inconsistent and exculpatory statements. Since Ms. Deland was the chief prosecution witness and her testimony went directly to the issue of guilt of the defendant, and since the requested information was discoverable, an in camera inspection was warranted.
We, therefore, conclude that in this case, the trial judge should have made an in camera inspection for material inconsistencies and Brady information in the requested statements of Ms. Deland, for use during cross-examination.
Accordingly, we will remand the case to the trial court for its determination of: (1) whether the written or recorded statements of Ms. Deland contain inconsistencies with her trial testimony, or other evidence favorable to the accused; and, if so, (2) whether such evidence is material to the defendant's guilt or punishment, employing the standard applicable on the basis of the totality of the facts and circumstances of this case, as stated in State v. Sylvester, 388 So.2d 1155 (La., 1980).
In the event of an affirmative determination of both of these factors by the trial court, a new trial will be required. However, upon a contrary finding, the conviction will be affirmed. For purposes of future appeals the statements should be sealed and made a part of the record. The proceedings and determination of the trial court, of course, will be subject to review on appeal.
Next, the defendant argues that he is entitled to statements made by Mary Deland before the Ouachita Parish Grand Jury. He alleges that such statements are inconsistent with her trial testimony. Alternatively, he asks for an in camera inspection of these statements. The defendant sought unsuccessfully to secure this information by a subpoena duces tecum and a motion for production.
The general rule is that the proceedings of the grand jury are to be kept secret. C. Cr. P. Art. 434(A). State v. Sheppard, 350 So.2d 615 (La., 1977). The transcript generally may not be used at trial even in the conduct of cross-examination. State v. Prestridge, 399 So.2d 564 (La., 1981). The purpose of this rule is to encourage the full disclosure of information about crimes. State v. Prestridge, supra.
The testimony of a witness before the grand jury may not be used in Louisiana for cross-examination, unless the testimony requested falls within one of two exceptions mentioned in Code of Criminal Procedure, Article 434. State v. Martin, 376 So.2d 300 (La., 1979). Cert. den. 499 U.S. 998, 101 S.Ct. 540, 66 L.Ed.2d 297. The exceptions are as follows:
"However, after the indictment, such persons may reveal statutory irregularities in grand jury proceedings to defense counsel, the attorney general, the district attorney, or the court, and may testify concerning them. Such persons may disclose testimony given before the grand jury, at any time when permitted by the court, to show that a witness committed perjury in his testimony before the grand jury. A witness may discuss his testimony given before the grand jury with counsel for a person under investigation or indicted, with the attorney general or the district attorney, or with the court." C. Cr. Part. 434.
In the case of State v. Peters, La., 406 So.2d 189, this court allowed an inspection in camera, of the grand jury testimony of a state witness who admitted to defense counsel that she had perjured herself before the grand jury. In that case, specific information could be provided to the court of the existence of inconsistent statements. The Court has consistently held that a trial judge is not required to grant an in camera inspection in response to a defendant's general request for grand jury testimony. State v. Martin, supra. State v. Lewis, 353 So.2d 703, State v. May, 339 So.2d 764 (La., 1976).
In this case there was no showing that the testimony of Ms. Deland fell within *1330 the two previously discussed exceptions to disclosure of grand jury testimony. The request by the defendant merely sought to ascertain whether any such inconsistent statements existed. This is not a sufficient showing by the defendant to impinge upon the secrecy of the grand jury. The trial judge did not err in refusing to order the State to produce Ms. Deland's grand jury testimony and in refusing an in camera inspection of this testimony.
The defendant presents seventeen assignments of error. The remaining assignments have been reviewed and we find that none of the assignments present reversible error; nor do any involve legal issues not governed by clearly applicable principles of law. The remaining assignments of error are treated in an appendix attached hereto which remains part of the public record of this Court, but which is not for publication with this opinion.
For the reasons assigned, defendant's conviction and sentence are affirmed, but the case is remanded for further proceedings in accordance with the views expressed herein, reserving unto the trial court the authority to grant a new trial on the basis of his findings, and also reserving the defendant's right to appeal from any adverse ruling by the trial court.
AFFIRMED CONDITIONALLY AND REMANDED.
NOTES
[*] Dennis & Lemmon, JJ. concur, disagreeing with the treatment of Assignment No. 8.
[**] Judge H. Charles Gaudin of the Court of Appeal, Fifth Circuit, and Judges Israel M. Augustine, Jr. and Philip C. Ciaccio of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices pro tempore, joined by Chief Justice Dixon and Associate Justices Marcus, Blanche and Watson.