DANIEL L. DYSART, Judge.
h Cornelius Armstead appeals his jury conviction and sentence for the crime of forcible rape. For the reasons that follow, we confirm the conviction and sentence.
PROCEDURAL BACKGROUND
By bill of information dated March 1, 2010, defendant was charged with forcible rape, a violation of La. R.S. 14:42.1. He entered a plea of not guilty. After a hearing on May 20, 2010, the trial court found probable cause and denied defendant’s motion to suppress the evidence. Defendant filed a motion to suppress statements which was initially granted by the trial court on October 1, 2010, but ultimately denied following a hearing on October 25, 2010.[1]
*893 On November 18, 2010, defendant filed a Motion to Compel the production of the state’s file for an in camera inspection to determine whether it contained any exculpatory evidence. Among the items for which defendant sought review were DNA tests and statements of the victim and a witness. It does not appear that a ruling was made on this motion.
12Pefendant was tried before a jury on March 1-2, 2010, which found him guilty of the charge of forcible rape. On March 24, 2011, defendant was sentenced to serve forty years at hard labor, to run concurrently with any other sentence which defendant was serving. In conformity with La. R.S. 14:42.1(B), defendant’s sentence provided that the first two years were to be served without benefit of parole.
Defendant timely filed the instant appeal.
FACTUAL BACKGROUND
The testimony elicited at trial reflected that, on the evening of September 26, 2009, defendant attended a party which was also attended by C.C., the victim (who also is defendant’s sister) and who reportedly is mentally challenged,[2] C.C.’s sister, and numerous others. According to the victim, during the course of the party, she went into one of the bedrooms in the home to use a computer with her sister. Her sister received a phone call and left the room. Defendant then entered the room, closed the bedroom door and locked it. He asked C.C. to perform oral sex on him, to which she said “no.” According to the victim, defendant “shoved [his penis] in [her] mouth,” then asked that she bend over and he had anal sex with her. After the incident, the victim felt defendant’s “sperms ... drop” on the green skirt she was wearing. Soon thereafter, C.C. heard her sister return to the room, twisting the locked doorknob.
C.C.’s sister corroborated much of the victim’s account of the evening. She testified that, during the aforementioned party, she and C.C. had used a computer |sm one of the bedrooms. She left the room when she received a phone call and when she returned, defendant was also in the room. She left the room again and, on her return, found the bedroom door locked. After she knocked, defendant opened the door, and she saw him “pulling up his pants” and the victim “dusting her own skirt.” She further testified that the room had a “sex smell.” She asked C.C. what had happened and C.C. denied that anything had occurred.
The following day, C.C.’s sister told their mother, who confronted C.C. about the preceding evening. The victim broke down in tears and related what had happened. C.C.’s mother contacted the police which led to defendant’s arrest.
ERRORS PATENT
A review of the record reveals no patent errors.
We now turn to defendant’s assignments of error.
ASSIGNMENT OF ERROR NO. 1
We address defendant’s second assignment of error first. When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Marcantel, 2000-1629, p. 8 (La.4/3/02), 815 So.2d 50, 55, citing, State v. Hearold, 603 So.2d 731, 734 (La.1992).
Defendant maintains that the evidence at trial was insufficient to support his conviction. He argues that his conviction was based on circumstantial evidence and *894 “vague allegations and charges.” He also submits that, because the serological and DNA testing were inconclusive, and because the victim had no physical findings, the state failed to meet its burden of proof.
14The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. Marcantel, supra, p. 8, 815 So.2d at 55. In evaluating a claim of insufficiency of evidence based on circumstantial evidence, the Supreme Court has indicated that La. R.S. 15:438 requires that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.’ Ultimately, all evidence, both direct and circumstantial must be sufficient under Jackson[3] to prove guilt beyond a reasonable doubt to a rational jury.” State v. Brown, 2003-0897, p. 22 (La.4/12/05), 907 So.2d 1, 18. (citations omitted).
Defendant was charged with and convicted of forcible rape, which is defined, in pertinent part, as “anal, oral, or vaginal sexual intercourse” that'is “deemed to be without the lawful consent of the victim” “[w]hen the victim is incapable of resisting the act by force and/or threat of physical violence, under circumstances where the victim reasonably believed that such resistance would not prevent the rape.” La. R.S. 14:42.1 A(l).
Our jurisprudence clearly establishes that the testimony of a victim, alone, is sufficient to establish the elements of the offense of forcible rape, even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Lewis, 97-2854 (La.App. 4 Cir. 5/19/99), 736 So.2d 1004,1023. In addition, this court has repeatedly held that a fact finder’s credibility decision should not be disturbed unless it is clearly contrary to the evidence. State v. Huckabay, 2000-1082, p. 33 (La.App. 4 Cir. | ,,2/6/02), 809 So.2d 1093, 1111; citing State v. Harris, 99-3147, p. 6 (La.App. 4 Cir. 5/31/00), 765 So.2d 432, 435.
Based on this well-established rule, we cannot find that the jury, which heard and weighed all of the evidence in this case, was clearly wrong in its findings or credibility decisions. The victim, both in her testimony at trial and in her recorded statements, testified that defendant forced her to perform oral sex and then had anal sex with her, despite her having spurned his request for same. She further testified that she “got scared just did it.” She did not call out for help because she “was scared” and “in shock.” She likewise did not believe that anyone would have heard her had she called for help, as the music at the party was loud. When asked why she did not tell anyone immediately after the incident, she testified that she feared her brother would go to jail.
There was significant corroboration of the victim’s testimony as well. As previously noted, C.C.’s sister testified that she found defendant and C.C. behind a locked door and when it was opened, defendant was pulling up his pants as C.C. was “dusting” her skirt.
More importantly, C.C. testified that sperm dropped on the skirt that she was wearing, and serology tests confirmed that seminal fluid was present on her skirt. While the seminal fluid did not contain any spermatozoa and testing did not lead to the specific identification of DNA material *895 related to defendant, according to Jodie Clements, a serologist employed by the New Orleans Police Department crime lab, DNA is “housed within a sperm cell.” The lack of any sperm cells thus inhibited the possibility of DNA testing according to Ms. Clements. This issue aside, the fact that seminal fluid was found on the victim’s skirt corroborated that a sexual encounter had taken place.
| ,/rhe lack of any physical findings on the victim’s body is of no consequence, as defendant suggests. Mithra Butler, the sexual assault nurse examiner who examined C.C., testified that C.C. was examined two days after the assault and, while she found no redness, bleeding or lacerations, a lack of physical findings is not unusual in sexual assault cases. More importantly, C.C. gave a consistent account of the incident to Ms. Butler to that contained in her statements and her testimony at trial.
Based on the foregoing, and viewing the evidence in a light most favorable to the prosecution, the evidence was sufficient for a reasonable jury to find appellant guilty of forcible rape. This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 2
Next, defendant argues that the trial court erred in failing to find that the state violated the discovery rules by failing to produce the victim’s and witness statements and/or failing to conduct and in camera inspection of the statements for exculpatory evidence.
The record reflects that C.C. and C.C.’s sister were interviewed by various detectives and the interviews were recorded. C.C. was again interviewed at the New Orleans Child Advocacy Center, and that interview was videotaped. The statements were published to the jury at trial, but not provided to defendant prior to trial.[4] Defendant submits that the failure of the state to produce these statements prevented him from determining whether they contained any exculpatory material. He further submits that he was unable to cross examine the witnesses based upon “any inconsistencies” in these statements, resulting in a “trial by ambush.”
17Discovery of “state reports and other matters not subject to disclosure” is governed by La. C. Cr. P. art. 728, which provides:
Except as provided in Articles 716, 718, 721, and 722, this Chapter does not authorize the discovery or inspection of reports, memoranda or other internal state documents made by the district attorney or by agents of the state in connection with the investigation or prosecution of the case; or of statements made by witnesses or prospective witnesses, other than the defendant, to the district attorney, or to agents of the state.
We note that, while a defendant is generally not entitled to statements by witnesses, “[t]he defendant may not be denied exculpatory statements made by a witness other than the defendant provided the statement is material and relevant to the issue of guilt or punishment.” State v. Harper, 2010-0356, p. 10 (La.11/30/10), 53 So.3d 1263, 1270, citing State v. Ates, 418 So.2d 1326, 1328 (La.1982). Under La. C. Cr. P. art. 718(1), on motion of a defendant, the state is to allow inspection and copying of any materials which “are favorable to the defendant and which are mate *896 rial and relevant to the issue of guilt or punishment.”
As the Ates court explained:
Under the United States Supreme Court decision of Brady v. Maryland, the State, upon request, must produce evidence that is favorable to the accused where it is material to guilt or punishment. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This rule has been expanded to include evidence which impeaches the testimony of a witness where the reliability or credibility of that witness may be determinative of guilt or innocence. Giglio v. U.S., 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Where a specific request is made for such information and the subject matter of such a request is material, or if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by' furnishing the information or by submitting the information to the trial judge. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).
\RId. at 1328.
Evidence is “material,” as this Court noted in State v. Greco, 2003-0709, p. 19 (La.App. 4 Cir. 12/17/03), 862 So.2d 1152, 1165, “only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different” (citation omitted). We further noted that a “reasonable probability5 is a probability sufficient to undermine confidence in the outcome. The same test is to be employed whether or not the defense makes a pretrial request for exculpatory evidence.” Id.
In this matter, defendant does not point to any inconsistencies in the victim’s or her sister’s statements which were admitted at trial. Nor does defendant cite any exculpatory evidence contained in any of the statements. Defendant fails to demonstrate that he was deprived of any exculpatory material under Brady and its progeny prior to trial. To the contrary, the statements contain no exculpatory evidence and are simply cumulative of the testimony elicited at trial. As such, they do not contain any additional information that would have aided the defendant’s cross-examination of the witness or the victim. See State v. Williams, 478 So.2d 983 (La. App. 4 Cir.1985). On this basis, we find that defendant has not shown how the production of any of the statements prior to trial would have affected the outcome of the trial. Nor do we find that the defense was in any way prejudiced by the failure of the state to disclose the statements prior to trial.
Furthermore, we note that the statements were admitted into evidence and played for the jury without any objection by defendant. In fact, defense counsel expressly indicated that there were no objections to the introduction of these statements, with the exception of the victim’s video-taped statement. Defense counsel initially had no objection; however, when the video inadvertently cut off, |9defense counsel objected because the video had not been provided. The objection had nothing to do with the state’s failure to produce exculpatory evidence. Defendant’s failure to object, and indeed, his acquiescence to the introduction of the statements, bars his complaint of it on appeal. See LaHaye v. Allstate Ins. Co., 570 So.2d 460, 466 (La. App. 3 Cir.1990).
ASSIGNMENT OF ERROR NO. 3
As his final assignment of error, defendant submits that his sentence is excessive. However, defense counsel neither objected when the court imposed the forty-year sentence, nor filed a motion to reconsider sentence as mandated by La.C.Cr.P. *897 art. 881.1. This court has held that the failure to file a motion to reconsider sentence or to object to the sentence at the time it is imposed precludes a defendant from raising a claim regarding his sentence on appeal. State v. Wilson, 2006-1421, p. 19 (La.App.3/28/07), 956 So.2d 41, 43; State v. Rodriguez, 2000-0519, p. 9 (La.App. 4 Cir. 2/14/01), 781 So.2d 640, 647; State v. Tyler, 98-1667 (La.App. 4 Cir. 11/24/99), 749 So.2d 767, 775. Thus, this claim was not preserved for our appellate review.
CONCLUSION
Based on the foregoing, we affirm defendant’s conviction and sentence.
AFFIRMED

. The record does not contain a transcript from either hearing on the motion to suppress statements.

. The victim’s name is withheld in order to protect her privacy.

. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

. The video statement obtained at the New Orleans Child Advocacy Center was not played in its entirety to the jury, although Detective Glenell Sentino described for the jury that portion of the tape video was cut off.